IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| TRINA M. MABUS, ) | Civil Action No. 3:11-494-RBH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Civil Rules 73.02(B)(2)(a) and 83.VII.02, et seq., DSC, concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

## **ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for DIB and SSI on March 13, 2007, alleging disability as of March 5, 2007. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on September 16, 2009, at which Plaintiff appeared and testified. On November 17, 2009, the ALJ issued a decision denying benefits and finding that Plaintiff was not disabled. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work exists in the national economy which Plaintiff could perform.

Plaintiff was thirty-six years old at the time of the ALJ's decision. She has a high school education (GED), with phlebotomy training at a technical college. Plaintiff has past relevant work as a nursing assistant, cook's aide, waitress, and cleaner/housekeeper. Plaintiff alleges disability due

to degenerative disc disease, peripheral neuropathy, major depressive disorder, generalized anxiety disorder, obesity, and degenerative joint disease.

The ALJ found (Tr. 25-35):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since March 5, 2007, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease; peripheral neuropathy; major depressive disorder; generalized anxiety disorder; obesity; and degenerative joint disease (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 404.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) that is limited to lifting or carrying ten pounds occasionally and less than ten pounds frequently; standing and/or walking about two hours in an eight-hour workday; sitting up to six hours in an eight-hour workday; occasional stooping, twisting, balancing, crouching, kneeling, and climbing of stairs or ramps; but must avoid crawling or climbing of ladders or scaffolds. Additionally, the claimant is limited to performing simple, routine, repetitive tasks in a low stress environment that does not require ongoing interaction with the public. A low stress environment is defined as not required to meet a rigid, inflexible production schedule; not required to make difficult or complex decisions; not required to put up with frequent changes to procedures or processes in the workplace; and not required to put up with difficult people, such as working at a complaint desk.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 22, 1973, and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569.a, 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 5, 2007 through the date of this decision (20 CFR 404.1520(g) and 416.920).

On January 6, 2011, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. Plaintiff filed this action in the United States District Court on March 2, 2011.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a).

**MEDICAL EVIDENCE**

Plaintiff is a Type-II (adult onset) diabetic and received treatment from endocrinologists at Laurel Endocrine Associates from April 2006 and August 2008. Tr. 217-219, 286-289, 292-293, 405-419, 425-426. She generally reported feeling "well" or fair" with no adverse symptoms or complications from her disease. Id. Examination findings were essentially normal, with no evidence of diabetic nephropathy (kidney disease), peripheral neuropathy, or retinopathy (disease of the eye). Tr. 407, 409, 412, 415, 419.

In July 2008, diagnostic tests revealed mild sensory peripheral neuropathy in Plaintiff's lower extremities. Tr. 387, 390-392. In December 2008, Dr. Robert Brennan of Laurel Endocrine Associates noted that Plaintiff had a monofilament test that was abnormal and she had symptoms of parethesia. He diagnosed Plaintiff with diabetic peripheral neuropathy. Tr. 421-423.

In February 2009, Plaintiff reported that she had a needles in her feet sensation. Tr. 434. In March 2009, Dr. Brennan indicated that Plaintiff had no new complaints and remained on her current medications. Tr. 402-404. After she complained of tinging in her feet and a burning sensation in her feet and legs in June 2009, Dr. Brennan adjusted her medications. Tr. 399-401.

Plaintiff also has carpal tunnel syndrome. Testing revealed severe right carpal tunnel in August 2006. Tr. 229. Dr. Bradley P. Presnal, of Moore Orthopaedics, performed a right carpal tunnel release, and noted on August 25, 2006 (after her surgery) that her pain was much improved. Tr. 230-231. Plaintiff complained of hand pains to Dr. Michael R. Ugino of Moore Orthopaedics in July 2008. Diagnostic tests revealed moderately severe left carpal tunnel syndrome and residual right carpal tunnel syndrome. Tr. 390-392. Plaintiff underwent a left carpal tunnel release in August 2008. Tr. 386. On August 15, 2008, Dr. Ugino noted that Plaintiff was doing well and

recommended strength training exercises for her hand. Tr. 384. Dr. James O'Leary of Moore Orthopaedics noted that Plaintiff's hand was doing very well on September 19, 2008. Tr. 382.

Plaintiff sought treatment from Dr. Presnal for complaints of pain in her feet and back from July 2006 through May 2007. Tr. 228-233. Testing revealed no sign of peripheral neuropathy or tarsal tunnel. Tr. 229. X-rays in October 2006 revealed some mild radiographic abnormalities and significant spasm. Tr. 228. An MRI of Plaintiff's lumbar spine in February 2007 revealed disc degeneration at L2-L3 and L3-L4, and less degeneration over L4-L5 and L5-S1. Dr. Presnal's impression was that Plaintiff had degenerative disc disease with moderate foraminal stenosis. He recommended physical therapy, lumbar epidural spinal injections, and anti-inflammatory medications. Tr. 237. Physical therapy notes (Tr. 245-252) indicated that Plaintiff reported improvement, her back was doing "okay," she was walking a mile daily, and she had improvement in her core strength. Tr. 249-250, 252, 256.

Plaintiff's primary care physician, Dr. Gurdon W. Counts, treated Plaintiff approximately three times in 2006, and in June 2007. Tr. 268-269. In June 2007, at the request of Plaintiff's counsel at the time, Dr. Counts completed a form concerning Plaintiff's ability to perform physical and mental work-related activities. Tr. 263-265. Dr. Counts opined that Plaintiff could only lift and/or carry up to ten pounds; could stand and/or walk less than two hours per day; could sit less than six hours per day; could never climb, couch, or crawl; and had limited reaching and handling abilities. He found she had no mental limitations. Dr. Counts wrote that Plaintiff's physical limitations were based on Plaintiff's lumbar spine pain with motion. Tr. 263. In support of his opinion, Dr. Counts referenced Plaintiff's 2007 MRI and that Dr. Presnal had treated Plaintiff. Tr.

5

264. The only clinical findings from Dr. Counts prior to his opinion was that he noted she was tender in her low back. Tr. 269.

In October 2007, Dr. Ellen Humphries, a State agency physician, reviewed the record and completed a Physical Residual Functional Capacity ("RFC") Assessment. She opined that Plaintiff could perform a reduced range of light work. Tr. 296-302.

From November to December 2007, Plaintiff was treated by Dr. Counts on several occasions. In November 2007, Dr. Counts noted tenderness in Plaintiff's flank with range of motion and palpation. Tr. 348. In February 2008, Dr. Counts noted that Plaintiff had lumbar spinal tenderness upon examination. Tr. 347. An MRI of Plaintiff's lumbar spine revealed mild diffuse disc bulge at L2-3, L3-4, and L4-5. Tr. 329, see Tr. 347. Dr. Counts referred Plaintiff to Midlands Orthopedics. Tr. 347.

On April 3, 2008, Dr. O'Leary noted that Plaintiff had a markedly abnormal gait, used a cane, had tenderness and limited lumbar range of motion, but had no pain with straight leg raising or hip range of motion, and had no motor or sensory deficits. Dr. O'Leary's impression was that Plaintiff had lumbar degenerative disc disease. He proposed conservative treatment, including physical therapy and referral to a pain specialist for consideration of steroid injections. Tr. 397.

On September 19, 2008, Plaintiff told Dr. O'Leary that her biggest complaint was knee pain. Tr. 382. Dr. O'Leary performed a partial medial menisctomy and arthroscopy with plica excision on Plaintiff's right knee. Tr. 331-332. Plaintiff reported that her knee was doing "fairly well" and was "much improved" on November 13, 2008. Dr. O'Leary noted that Plaintiff continued to have spinal tenderness and limited range of motion of her spine, but she had full range of motion of her knee bilaterally and 5/5 motor strength. Tr. 377.

Dr. O'Leary treated Plaintiff again in January, February, and May 2009. Tr. 368-376. He observed that Plaintiff used a cane on some, but not all, occasions. Tr. 368, 370, 374. Examination findings indicated that Plaintiff had abnormal gait, spinal tenderness, and limited spinal range of motion, but full hip range of motion, normal lower extremity motor strength, and intact sensation. Tr. 369, 375. Lumbar spine diagnostic tests revealed disc bulging, but no significant stenosis. Tr. 371-373. On September 1, 2009, Dr. O'Leary referred Plaintiff to a pain clinic and recommended that Plaintiff limit her activities and lose weight. Tr. 371.

Dr. Counts treated Plaintiff on several occasions from February to July 2009, but his notes contain no significant clinical findings. Tr. 343-345. On July 10, 2009, Dr. Counts opined that Plaintiff was totally and permanently disabled due to her mental and physical impairments, and was unable to be gainfully employed. Tr. 333, 337.

On July 13, 2009, Dr. Mark Lencke, a neurologist, performed a consultative examination. Dr. Lencke noted that Plaintiff was able to walk unassisted, but did better with a walking stick. His examination revealed that Plaintiff had an abnormal gait and decreased sensitivity in her lower extremity, no drift of her upper extremities, good strength in her upper and lower extremities, and no abnormal movements. Dr. Lencke's impression was that Plaintiff had a gait disorder coming from degenerative disease of her lumbar spine and a pronounced diabetic profound neuropathy. Tr. 338-341.

In August 2009, Dr. O'Leary completed a form in which he indicated that Plaintiff had extreme physical and mental functional limitations. He opined that Plaintiff could lift and/or carry ten pounds; could frequently lift and/or carry less than ten pounds; could stand and/or walk less than two hours in an eight-hour day; could sit for less than six hours in an eight hour day. He also wrote

7

that she could never climb, balance, stoop, kneel, crouch or crawl, and had limited ability to reach, handle, finger, feel, and see. Dr. O'Leary based his limitations on Plaintiff's lumbar degenerative disc disease, peripheral neuropathy, diabetes, and psychiatric disease as well as evidence that Plaintiff was using a cane, was unable to feel her feet, that she had a poor gait, and that she had decreased sensation. Tr. 363-365. His treatment notes indicated that Plaintiff was applying for disability benefits and that she complained of constant 10/10 pain; used a cane for balance; could not sit, stand, bend, stoop, or walk for prolonged periods; and had been hospitalized recently for psychiatric reasons. On September 1, 2009, examination findings remained essentially the same and Dr. O'Leary continued to recommend conservative treatment, including referral to a pain specialist, modified activities, and sparing use of pain medicines. He wrote that Plaintiff was applying for disability and she had very significant problems both physically and psychiatrically. He stated that he doubted she would be able to perform even light duty work. Tr. 367.

Plaintiff also suffered from mental impairments. In July 2007, Plaintiff sought mental health treatment at the Lexington County Community Mental Health Center, at which time she was diagnosed with major depressive disorder. Mental status examination findings revealed some abnormalities, but no current thoughts of suicide or homicide, intact memory and concentration, sound judgment, and an average fund of knowledge. Tr. 273-284. Plaintiff's global assessment of functioning was assessed at 65,[1] reflecting mild symptoms. Tr. 454.

---

[1]The GAF contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning, generally for the level of functioning at the time of evaluation. A GAF score between 21 and 30 may reflect that "behavior is considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment." A score of 31 to 40 indicates some impairment in reality testing or communication or "major impairments in several areas," 41 to 50 indicates "serious symptoms" or "serious difficulty in social
(continued...)

On December 6, 2007, Dr. John B. Bradley, a clinical psychologist, performed a consultative examination. Plaintiff described a somewhat restricted lifestyle which included taking care of her young child (picking her up from school, helping her with homework, and getting her ready for bed); performing household chores; shopping with her husband; and driving short distances. Dr. Bradley's examination revealed that Plaintiff had a blunt affect, depressed mood, suicidal ideation without intent, and below normal attention and concentration. He noted that she had average memory; normal intelligence; good judgment and insight; clear and goal-directed thoughts; and no delusions, phobias, obsessions, compulsion, or homicidal thoughts. Dr. Bradley concluded that Plaintiff had a long history of psychological disorders and had numerous symptoms of depression and anxiety, and symptoms of posttraumatic stress disorder. Despite these disorders, he found that Plaintiff could communicate her thoughts and ideas; was able to meet her personal needs; could identify and avoid simple dangers; had adequate social skills although she led a somewhat restricted lifestyle; and could manage her own finances. He assessed a GAF score of 55, indicating moderate symptoms. Tr. 304-307.

On December 13, 2007, Dr. Edward Waller, a State agency psychologist, completed a Psychiatric Review Technique Form and a Mental RFC Assessment. Dr. Waller opined that Plaintiff had severe mental impairments, but none of the impairments or combination of impairments met or equaled any of the Listings, and Plaintiff retained the mental functional capacity to perform work-related activities. Specifically, he found that Plaintiff could understand and remember short and

---

<sup>1</sup>(...continued)
or occupational functioning," 51 to 60 indicates "moderate symptoms" or "moderate difficulty in social or occupational functioning," and 61 and 70 reflects "mild symptoms" or "some difficulty in social, occupational, or school functioning ." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000).

simple instructions; make simple work-related decisions; perform simple tasks for a two-hour duration without special supervision; maintain a regular work schedule and ask for assistance from others; and work in a low stress environment without ongoing interaction with the public. Tr. 309-325.

Plaintiff continued to be treated at the Lexington County Community Mental Health Center from July to November 2008 for depression, anxiety, sleep/appetite disturbance, irritability, and suicidal findings. It was noted that despite some negative mental status examination findings, her concentration, attention, and memory were intact, and she had good judgment and insight. Tr. 451-452, 456, 458. On July 7, 2008, Dr. Leah McCartt noted that Plaintiff was taking Cymbalta and Klonipin for her psychological condition, that Plaintiff was stable, and that she would consider a taper down on Klonopin in the near future. Tr. 458-459. In January 2009, Dr. McCartt continued to note findings of depression and anxiety, but also that Plaintiff had intact concentration, attention, and memory, and good judgment and insight. Tr. 448-449.

On February 13, 2009, Plaintiff went to the emergency room because she had suicidal and depressive thoughts. Her medications were adjusted, she was discharged the next day, she was instructed to follow-up with her mental care provider, and she was assigned a GAF score of 44 (indicative of serious symptoms). Tr. 432-435. On March 30, 2009, Dr. McCartt noted that there was a significant reduction in Plaintiff's psychological symptoms. She found that although Plaintiff continued to have some negative mental status findings, Plaintiff had intact concentration, attention, and memory, and good judgment and insight. Plaintiff's GAF score was assessed at 70, indicating mild symptoms. Tr. 445-446.

On May 18, 2009, Dr. McCartt's notes indicate improvement, including that Plaintiff had an euthymic mood and appropriate affect. Dr. McCartt concluded that treatment was effective in stabilizing Plaintiff's mood, leaving only mild to moderate anxiety and insomnia. Plaintiff's GAF score was 70. Tr. 442-443. During his consultative examination on July 13, 2009, Dr. Lenke noted that Plaintiff was alert and oriented times three, had good attention and concentration, and had good memory. Tr. 340.

On August 10, 2009, Dr. McCartt opined that Plaintiff's mental impairments were of listing-level severity for affective disorders including major depression and anxiety. She opined that Plaintiff had moderate to marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace and had an episode of decompensation (as to her recent psychiatric hospitalization). Tr. 350-361. Dr. McCartt's treatment notes from the same day (August 10, 2009) indicate that she assessed Plaintiff's GAF score as 68, indicating mild symptoms. Tr. 440-441.

## **HEARING TESTIMONY**

Plaintiff testified that her medical conditions included back pain, hand problems, diabetes, and mental health issues, which prevented her from performing a wide range of physical activities. Tr. 54-55, 58. She stated that she needed to sit to perform tasks and used a cane to prevent falling. Tr. 55, 58-59, 67. Plaintiff testified that her diabetes caused blurred vision, disorientation, and low blood sugar at times. Tr. 60-61. She stated that she takes eight injections a day for her diabetes and takes Vicodin (which makes her very sleepy) for her pain. Tr. 60-61. Plaintiff stated that her mental health issues affected her concentration and ability to interact with large groups. Tr. 61, 65. Plaintiff's daily activities included caring for her young child (helping her dress, picking her up from

11

school, and helping with homework, going to the grocery store and church with her husband, and visiting friends and family. Tr. 53-54, 63.

## **DISCUSSION**

Plaintiff alleges that: (1) the ALJ failed to properly weigh the opinions of her treating physicians; (2) the ALJ erred in failing to find that her diabetes is a severe impairment, (3) the ALJ erred in evaluating her RFC in violation of SSR 96-8p; (4) the ALJ erred in propounding a defective hypothetical to the VE; and (5) the ALJ erred in his evaluation of Plaintiff's symptoms (pain/credibility). The Commissioner contends that the ALJ's decision that Plaintiff was not disabled is supported by substantial evidence.[2]

A.  Severe Impairment/RFC

Plaintiff alleges that the ALJ erred in finding that her diabetes was not a severe impairment. She also argues that the ALJ erred by failing to conduct a proper RFC analysis. The Commissioner does not appear to dispute that the ALJ erred in failing to find that Plaintiff's diabetes was a severe impairment, but argues that it is legally relevant that he did so because the ALJ did not

---

[2]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

end his analysis at step two of the sequential evaluation process[3] (as he found that Plaintiff had other severe impairments).

It is the claimant's burden to show that he or she had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "Basic work activities" are defined as:

> the abilities and aptitudes necessary to do most jobs. Examples of these include --
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b). An impairment is "not severe" or insignificant only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

Here, the ALJ erred in failing to find that Plaintiff's diabetes was a "severe" impairment. Plaintiff has been diagnosed with diabetes and is treated with insulin for her condition. She has presented evidence that she suffers from peripheral neuropathy as a result of her diabetes. A number

---

[3]In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

13

of her treating and examining physicians indicated that Plaintiff has problems walking attributable at least in part to her diabetic neuropathy. Thus, Plaintiff has met her burden of showing that her diabetes is a "severe" impairment which interferes with her ability to work.

An ALJ's failure to consider whether an impairment is severe may be harmless where the ALJ discusses the evidence and limitations related to that impairment at step four, see Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (noting that "[e]ven assuming that the ALJ erred in neglecting to list the bursitis at Step 2, any error was harmless" and "[t]he decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4."). Here, however, it is unclear that the ALJ fully considered the effects of Plaintiff's diabetes at step four. As discussed below, the ALJ does not appear to have determined Plaintiff's RFC in compliance with controlling law.

Plaintiff contends that the ALJ failed to properly evaluate her RFC because, in violation of SSR 96-8p, he failed to provide any analysis of how he determined Plaintiff's RFC. The Commissioner appears to argue that the ALJ provided a correct RFC analysis because he included all of Plaintiff's credible complaints in his RFC and the RFC is supported by the medical opinions of the State agency experts, evidence that Plaintiff received conservative treatment which improved her condition, and because there were inconsistencies in her own statements concerning her symptoms. In reply, Plaintiff argues that the ALJ has provided no explanation of how he came up with Plaintiff's RFC or how her diabetes affects her RFC. She argues that such error is not harmless because a more restrictive RFC could have lead to a finding of disability and that a more restrictive RFC could have changed the testimony of the VE.

The ALJ's RFC assessment should be based on all the relevant evidence. 20 C.F.R. § 404.1545(a). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative

discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis...." SSR 96-8p. The ALJ must discuss the claimant's ability to work in an ordinary work setting on a regular work schedule. Id.

Here, it is unclear from the ALJ's decision how he arrived at the Plaintiff's RFC. Thus, it is not possible to determine from the decision whether the RFC is correct under controlling law. It is recommended that this action be remanded to the Commissioner to determine Plaintiff's RFC pursuant to controlling law in light of all of the evidence including evidence concerning Plaintiff's impairment of diabetes.

B.  Credibility/Pain

Plaintiff argues that the ALJ failed to properly evaluate her symptoms because the ALJ noted Plaintiff's testimony concerning her limitations, side effects, and pain, but failed to analyze it; appears to have relied exclusively on medical evidence to Plaintiff's subjective complaints; and failed to evaluate the side effects of Plaintiff's medications. The Commissioner does not appear to have fully addressed this argument.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain

15

itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he or she suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Here, the ALJ found at the first step that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. At the second step, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the RFC found by the ALJ]. Tr. 28. Plaintiff contends that the ALJ impermissibly discounted Plaintiff's symptoms merely based on the medical record. It is unclear from the ALJ's opinion why he discounted Plaintiff's symptoms. After making the above statement, the ALJ discussed Plaintiff's medical record at length and explained his reasons for discounting the opinions of three of Plaintiff's treating physicians. Tr. 28-33. Additionally, although the ALJ noted that Plaintiff complained of medication side effects (drowsiness from Vicodin - Tr. 27), he did not address these in his decision. See 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]"). This action should be remanded to the ALJ to fully evaluate Plaintiff's credibility in light of all of the evidence. In doing so, the ALJ should also consider the side effects of Plaintiff's medications.

16

### C. Treating Physicians

Plaintiff alleges that the ALJ erred in evaluating the opinions of three of her treating physicians (Dr. Counts, Dr. McCartt, and O'Leary). The Commissioner contends that the ALJ's decision to discount these opinions is supported by substantial evidence.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

Here, the ALJ stated he discounted Dr. O'Leary's opinion because Dr. O'Leary found that Plaintiff had 5/5 strength, no muscle wasting, and equivocal straight-leg raise testing; an opinion of disability is reserved to the Commissioner; and Dr. O'Leary's form was internally inconsistent as he found that Plaintiff could left less than ten pounds frequently, but could lift a maximum of ten pounds. It is unclear how the ALJ found that Dr. O'Leary's form was internally inconsistent based on the lifting limitations. It is not uncommon for maximum weight that a claimant can lift (how much can be lifted one time or occasionally) than the maximum weight a claimant can lift frequently (up to 2/3 of the day - see SSR 83-10). The ALJ's decision to discount Dr. O'Leary's opinion because of findings of unequivocal straight-leg testing, lack of muscle wasting, and 5/5 strength also does not appear to consider that Dr. O'Leary noted objective testing indicating that Plaintiff had peripheral neuropathy and degenerative disc disease. Further, Dr. O'Leary noted on numerous occasions that Plaintiff had limited range of motion, had an abnormal gait, and used a cane. The ALJ also noted that Dr. O'Leary's restrictions were based on Plaintiff's subjective complaints. Tr. 32. Review of the form completed by Dr. O'Leary, however, does not indicate such. See Tr. 363-365 It is recommended that this action be remanded to the Commissioner to evaluate Dr. O'Leary's opinion of disability in light of all of the evidence.

Because the undersigned finds that the ALJ's failure to properly analyze Plaintiff's RFC, credibility, and the opinion of treating physician Dr. O'Leary are sufficient reasons to remand the case to the Commissioner, the undersigned declines to specifically address Plaintiff's additional allegations of error by the ALJ. However, upon remand, the Commissioner should take into consideration Plaintiff's remaining allegations of error.

18

## **CONCLUSION**

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to evaluate Plaintiff's credibility, RFC, and opinion of her treating physicians in light of all of the evidence and applicable law, and to consider Plaintiff's remaining allegations of error.

RECOMMENDED that the Commissioner's decision be **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be **remanded** to the Commissioner for further administrative action as set out above.

Joseph R. McCrorey
United States Magistrate Judge

July 31, 2012
Columbia, South Carolina